**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BOBBY COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 C 1094 |
| | ) | |
| CITY OF CHICAGO, Former CHICAGO | ) | Judge Edmond E. Chang |
| POLICE SERGEANT RONALD WATTS, | ) | |
| Former OFFICER KALLATT | ) | Magistrate Judge Sheila M. Finnegan |
| MOHAMMED, OFFICER BRIAN | ) | |
| BOLTON, OFFICER KENNETH YOUNG | ) | |
| JR., OFFICER DARRYL EDWARDS, | ) | |
| OFFICER MATTHEW CADMAN, | ) | |
| OFFICER MICHAEL SPAARGAREN, | ) | |
| OFFICER GEROME SUMMERS JR., | ) | |
| OFFICER CALVIN RIDGELL, SERGEANT | ) | |
| ALVIN JONES, TERRY HILLARD, PHILIP | ) | |
| CLINE, DEBRA KIRBY, KAREN ROWAN, | ) | (This case is part of *In re: Watts* |
| and any other yet-unidentified officers of the | ) | *Coordinated Pretrial Proceedings*, Master |
| Chicago Police Department, | ) | Docket Case No. 19 C 1717) |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Reiter Burns LLP, for its answer to Plaintiff's Complaint ("Complaint"), states:

### Introduction

1.     Bobby Coleman was convicted and incarcerated for a crime he did not commit.

**ANSWER**:     The City admits on information and belief plaintiff pleaded guilty to and was convicted for possession of a controlled substance in Case No. 03 CR 2644 and was sentenced to four years in custody of IDOC. The City denies on information and belief the remaining allegations contained in paragraph 1.

2.     The crime never happened; it was completely fabricated by Chicago police officers.

1

**ANSWER**:     The City denies on information and belief the allegations in paragraph 2.

3.     Mr. Coleman was arrested on January 4, 2003. Mr. Coleman's arrest occurred at the Ida B. Wells housing complex, a location that was heavily policed by corrupt Chicago police officers.

**ANSWER**:     Based on police department reports, the City admits plaintiff was arrested on January 4, 2003, in the grounds of the Ida B. Wells housing complex. The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the vague and undefined phrase "corrupt Chicago police officers," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent that phrase is intended to refer to the Defendant Officers, the City admits that the Chicago Police Department ("CPD") received information alleging Defendant Watts was engaging in criminal misconduct regarding drug dealers at the Ida B. Wells housing complex, and that CPD's Internal Affairs Department ("IAD") participated with federal authorities in a federally-led investigation of those allegations. The City further admits Watts (in 2013) and Defendant Mohammed (in 2012) pleaded guilty to and were convicted of federal crimes. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3.

4.     The corrupt officers sought bribes, planted drugs, and falsely accused many people, including Mr. Coleman, of possessing drugs.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the vague and undefined phrase "corrupt officers," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent that phrase is intended to refer to the Defendant Officers, the City admits that the CPD received information alleging Defendant Watts was engaging in criminal misconduct regarding drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a federally-led investigation of those allegations. The City further admits

Watts and Mohammed pleaded guilty to and were convicted of federal crimes. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4.

5.     The type of encounters these police officers had with Mr. Coleman was unfortunately quite common, and the consequences were dire: false arrests, criminal proceedings, incarcerations, and a subsequent felony record.

**ANSWER**:     The City objects to the vague, argumentative, and conclusory nature of the allegations in paragraph 5, to which an answer cannot reasonably be formulated. To the extent an answer is required, and this paragraph refers to allegations made in preceding paragraphs, the City adopts and restates its prior answers and responses thereto. In further response, the City is without knowledge or information sufficient to form a belief as to the truth of the vague allegations in paragraph 5 ("quite common;" "encounters"), including who is meant by "these police officers."

6.     Realizing that he faced no chance of winning at trial, Mr. Coleman eventually pled guilty to this false arrest.

**ANSWER**:     The City admits on information and belief plaintiff pleaded guilty to and was convicted for possession of a controlled substance in Case No. 03 CR 2644. Based on plaintiff's guilty plea in that case, the City denies the allegation that plaintiff's arrest was "false." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6.

7.     After Mr. Coleman completed his sentence, Defendants Watts and Mohammed were caught on tape engaging in the exact type of misconduct that Mr. Coleman had alleged against them.

**ANSWER**:     Based on federal documents, the City admits that on November 21, 2011, Defendants Watts and Mohammed were caught in an undercover sting operation stealing government funds they believed to be drug proceeds. The City denies the remaining allegations contained in paragraph 7 inconsistent with the foregoing.

8.    The federal government charged Watts and Mohammed criminally, and the disgraced officers pled guilty and served time in federal prison.

**ANSWER**:    The City admits on information and belief the allegations in paragraph 8.

9.    Since then, evidence has come to light showing that Watts and his police team members engaged in a pattern of criminal misconduct against public housing residents and visitors, and the Chicago Police Department officials have long known about that pattern.

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff vaguely and collectively alleges to be part of Watts' "police team members," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations are intended to refer to the Defendant Officers, the City admits that CPD received information in 2004 alleging Defendant Watts was engaging in criminal misconduct regarding drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a federally-led investigation of those allegations. The City further admits Defendant Mohammed was subsequently included as a target of the investigation. The City denies the remaining allegations in paragraph 9 that are inconsistent with the foregoing.

10.    The scope of this misconduct cannot be overstated.

**ANSWER**:    The City objects to the argumentative and conclusory nature of the assertion in paragraph 10, to which an answer cannot reasonably be formulated. To the extent an answer is required, and this paragraph refers to allegations made in preceding paragraphs, the City adopts and restates its prior answers and responses thereto. In further response, the City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 10.

11.    For example, the Chief Justice of Illinois's Court of Claims has written that "many individuals were wrongfully convicted as a result of one of the most staggering cases of police corruption in the history of the City of Chicago," explaining that "Watts and his team of police

officers ran what can only be described as a criminal enterprise right out of the movie 'Training Day'".

**ANSWER**: The City admits on information and belief the existence of an Order dated December 13, 2018, in *Glenn v. State of Illinois*, No. 19 CC 0568, in the Court of Claims of the State of Illinois, and refers to that Order for its content. The City lacks knowledge or information as to the individuals purported to be part of the vague and unidentified "team of police officers" contemplated in the Order. The City denies any remaining allegations in paragraph 11 inconsistent with the foregoing.

12. The Court of Claims Chief Justice explained that "[o]n many occasions when these residents [of public housing] refused to pay the extortive demands the Watts crew would fabricate drug charges against them."

**ANSWER**: The City admits on information and belief the existence of an Order dated December 13, 2018, in *Glenn v. State of Illinois*, No. 19 CC 0568, in the Court of Claims of the State of Illinois, and refers to that Order for its content. In further response, the City states the quotation in paragraph 12 paraphrases language contained in that Order, but the partial quotation as paraphrased is incomplete and somewhat misleading. The City lacks knowledge or information as to the individuals purported to be part of the argumentative, vague, and undefined term "Watts crew" as referenced in the quoted language of paragraph 12, and the City therefore makes no further response to any allegation or inference relying on that term.

13. The Illinois Appellate Court, too, has weighed in on the scope of the scandal, repeatedly calling Watts and his team "corrupt police officers" and "criminals" and chastising the City's police disciplinary oversight body for doing "nothing to slow down the criminals" from their rampant misconduct and perjury.

**ANSWER**: The City admits the existence of *People v. Glenn*, 2018 IL App (1st) 161331, refers to that Opinion for its content, and denies all allegations to the contrary. The City specifically denies any inference or allegation that CPD was "doing nothing" regarding the allegations of Watts' misconduct, as the CPD's IAD participated with federal authorities in a federally-led

investigation of those allegations. Further answering, the City states the selected language quoted in paragraph 13 referred to OPS, and that the Opinion makes no reference to IAD or IAD's participation in the joint federally-led investigation. The City denies any remaining allegations in paragraph 13 inconsistent with the foregoing.

14. On or around November 16, 2017, the Cook County State's Attorney Office (CCSAO) successfully moved to vacate the convictions of 15 individuals framed by the Watts outfit.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the argumentative, vague, and undefined phrase "the Watts outfit," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 14.

15. In light of the decision of the CCSAO, and recognizing the scope of misconduct that the City let go on for more than a decade unabated, many of the Watts crew were placed on desk duty.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the argumentative, vague, and undefined phrase "Watts crew," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent that phrase is intended to refer to the Defendant Officers, the City admits certain individuals were assigned to administrative duty on or around November 17, 2017. The City denies the argumentative allegation that the City "let go on" Defendant Watts' misconduct for more than a decade, as CPD's IAD participated with federal authorities in the federally-led investigation of allegations that Watts, and later Mohammed, were engaging in criminal conduct regarding drug dealers at the Ida B. Wells housing complex. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 15.

6

16.     Since then, three additional groups of victims were exonerated *en masse* on September 24, 2018 (including Mr. Coleman), November 2, 2018, and February 2019 respectively.

**ANSWER**:     The City admits on information and belief plaintiff's conviction was vacated on September 24, 2018. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16.

17.     In recognition of the scope of their misconduct, the CSSAO will no longer call many of the Watts's crew members as witnesses "due to concerns about [their] credibility and alleged involvement in the misconduct of Sergeant Watts."

**ANSWER**:     The City admits the existence of correspondence from Joe Magats, Chief of the Criminal Prosecutions Bureau of the Cook County State's Attorney's Office ("CCSAO"), to CPD's Office of Legal Affairs, in which he stated the CCSAO would no longer call certain individuals as witnesses in matters handled by the CCSAO "due to concerns about their credibility and alleged involvement in the misconduct of Sergeant Watts." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 17, as the CCSAO did not respond to CPD's request for information regarding the basis for the CCSAO's determination.

18.     Through this lawsuit, Mr. Coleman seeks accountability and compensation for being deprived of his liberty as a result of Defendants' misconduct.

**ANSWER**:     The City admits plaintiff's complaint seeks damages, but it denies liability to plaintiff for any of the claims asserted in the complaint and/or the damages alleged therein, and it denies any remaining allegations in this paragraph.

**Jurisdiction and Venue**

19.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**ANSWER**: The City admits plaintiff's complaint includes claims that purport to be based on 42 U.S.C. §1983. The City denies liability to plaintiff for any and all claims asserted in the complaint.

20. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER**: The City admits plaintiff's complaint purports to assert claims pursuant to federal statutes that seek to invoke the jurisdiction of this court. The City admits 28 U.S.C. §1367(a) provides for supplemental jurisdiction over certain claims, and that plaintiff's complaint includes "state law" claims that seek to invoke the supplemental jurisdiction of this court. The City denies liability to plaintiff for any and all claims asserted in the complaint.

21. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district and Defendant City of Chicago is a municipal corporation located here. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**ANSWER**: The City admits venue is proper in the United States District Court, Northern District of Illinois, for the claims asserted in plaintiff's complaint. The City denies liability to plaintiff for any and all claims in the complaint.

**The Parties**

22. Bobby Coleman is a 38-year-old man who currently resides in Chicago, Illinois.

**ANSWER**: The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.

23. At all times relevant to this complaint, Defendants Ronald Watts, Alvin Jones, Kallatt Mohammed, Brian Bolton, Kenneth Young Jr., Darryl Edwards, Matthew Cadman, Michael Spaargaren, Gerome Summers, and Calvin Ridgell were police officers employed by the City of Chicago and acting within the scope of their employment and under the color of law. Collectively, these individual Defendants are referred to as Defendant Officers.

**ANSWER**: The City admits that, at various times, Defendants Ronald Watts, Kallatt Mohammed, Alvin Jones, Brian Bolton, Kenneth Young Jr., Darryl Edwards, Matthew Cadman,

Michael Spaargaren, Gerome Summers, and Calvin Ridgell were employed by the CPD as police officers. The City denies all of the individual defendants were employed by CPD or acted as CPD employees during the entire time period contemplated in the complaint. The remaining allegations in paragraph 23 assert legal conclusions to which no response is required. To the extent a further response is deemed necessary, the City lacks knowledge or information of the misconduct involving plaintiff as alleged against the Defendant Officers in the complaint, but it denies the commission of the criminal acts alleged therein is conduct that is within the scope of a police officer's employment or under color of law. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 23.

24.     At all relevant times, Defendant Watts was a leader of the Second District Tactical Team that worked the Ida B. Wells housing complex.

**ANSWER**:     The City admits that at certain times, Defendant Watts was a Chicago Police officer assigned to the Second Police District, the boundaries of which included the Ida B. Wells housing complex. The City further admits Defendant Watts was one of the sergeants assigned to supervise tactical teams working out of the Second District. The City denies Defendant Watts was a Chicago police officer "at all relevant times" contemplated in the complaint, and it denies any remaining allegations contained in paragraph 24.

25.     At all times relevant, Defendants Mohammed, Jones, Summers, Ridgell, Edwards, Young, Cadman, Bolton, and Spaargaren worked on Watts's tactical team.

**ANSWER**:     The City admits that Defendants Mohammed, Jones, Summers, Ridgell, Edwards, Young, Cadman, Bolton, and Spaargaren were assigned at various times to tactical teams supervised by Defendant Watts. The City denies any remaining allegations in paragraph 25 inconsistent with the foregoing.

26.     At all relevant times, Defendant Terry Hillard and Phillip Cline were the Superintendents of the Chicago Police Department.

**ANSWER**: The City admits Mr. Hillard served as Superintendent of Police from approximately February 1998 to April 2003. The City admits Mr. Cline served as Superintendent of Police from approximately November 2003 to April 2007. The City denies the remaining allegations contained in paragraph 26 inconsistent with the foregoing.

27. At all relevant times, Debra Kirby and Karen Rowan were Assistant Deputy Superintendents of the Chicago Police Department, acting as the head of its Internal Affairs Division (IAD). Collectively, these Defendants, along with Defendants Hillard and Cline, are referred to as Defendant Supervisory Officers.

**ANSWER**: The City admits Ms. Kirby served as Assistant Deputy Superintendent of the CPD assigned to IAD from approximately July 2004 through March 2008. The City admits Ms. Rowan served as Assistant Deputy Superintendent of CPD assigned to IAD from October 2003 through July 2004. The City denies the remaining allegations contained in paragraph 27 that are inconsistent with the foregoing.

28. The Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois. The City operates the Chicago Police Department (CPD). The City is responsible for the policies, practices, and customs of the City and CPD.

**ANSWER**: The City admits it is a municipal corporation duly incorporated under the laws of the State of Illinois, and that the CPD is an administrative department of the City. The City states that the allegations as to what it is "responsible for" consist of conclusions of law so vague that the City lacks knowledge or information sufficient to form a belief as to the truth of those allegations. The City further states that because plaintiff does not identify the alleged "policies, practices, and customs" referred to in paragraph 28, the City is without knowledge or information sufficient to form a belief as to the truth of those allegations. To the extent plaintiff refers to "policies, practices, and customs" alleged elsewhere in the complaint that are or may be unlawful, the City denies those allegations. The City denies any remaining allegations in paragraph 28.

## Factual Background

29.    Mr. Coleman's mother lived in the Chicago Housing Authority's Ida B. Wells housing complex during the 2000s, and Mr. Coleman would frequently go there to visit her.

**ANSWER**:    The City is without knowledge or information sufficient to form a belief as to the truth of the vague allegations as phrased in paragraph 29.

30.    During the early 2000s, a tactical team of CPD officers, led by Defendant Watts, actively patrolled the complex.

**ANSWER**:    The City admits that in the 2000s, the Ida B. Wells housing complex was within the Second District of the CPD and was patrolled by CPD police officers, including a tactical team for which Defendant Watts was a supervising sergeant.

31.    Watts and his tactical team members were well known to Mr. Coleman and the residents of the Ida B. Wells area.

**ANSWER**:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

32.    Watts and his tactical team members maintained a visible presence in the Ida B. Wells area. The Watts team had a reputation in the community for harassing, intimidating and fabricating criminal charges against the area's residents and visitors.

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the vague and undefined term "Watts team," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations are intended to refer to the Defendant Officers, the City is without knowledge or information sufficient to form a belief as to the truth of those allegations.

33.    The Watts team's pattern of harassment continued with Mr. Coleman.

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the vague and undefined term "Watts team," and it therefore makes no further response to the allegations in this paragraph incorporating that term.

To the extent the allegations are intended to refer to the Defendant Officers, the City is without knowledge or information sufficient to form a belief as to the truth of those allegations.

34.     Prior to January 2003, Watts had stopped, searched, and harassed Mr. Coleman on several occasions in and around the Ida B. Wells CHA complex.

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34.

### Mr. Coleman is Framed on January 4, 2003[1]

35.     On the morning of January 4, 2003, Mr. Coleman left his mother's apartment in Ida B. Wells to travel to the store.

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35.

36.     As Mr. Coleman was driving to the store, Defendants Ridgell and Watts pulled Mr. Coleman over.

**ANSWER**:     Based on police department reports pertaining to plaintiff's arrest on January 4, 2003, the City denies the allegations in paragraph 36.

37.     Mr. Coleman did not have any drugs or any other contraband on his person or in his vehicle.

**ANSWER**:     Based on police department reports pertaining to plaintiff's January 4, 2003 arrest and plaintiff's guilty plea in Case No. 03 CR 2644, the City denies the allegations in paragraph 37.

38.     Defendants Ridgell and Watts approached Mr. Coleman's curbed car and asked Mr. Coleman where he was going.

**ANSWER**:     Based on police department reports pertaining to plaintiff's arrest on January 4, 2003, the City denies the allegations in paragraph 38.

---

[1] Although they do not conform with pleading rules, to the extent that titles used throughout the complaint require an answer, the City denies on information and belief all wrongful conduct alleged in these titles.

39.    Mr. Coleman informed Defendants Ridgell and Watts that he was going to the store. Defendant Ridgell called Mr. Coleman a liar and slapped him about the face.

**ANSWER**:    The City denies the allegations in paragraph 39 to the extent they are inconsistent with police department reports pertaining to plaintiff's arrest on January 4, 2003. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 39.

40.    The Defendants took Mr. Coleman out of the car, handcuffed him, and put him into the backseat of their unmarked car.

**ANSWER**:    The City denies the allegations in paragraph 40 to the extent they are inconsistent with police department reports pertaining to plaintiff's arrest on January 4, 2003. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 40.

41.    One of the Defendants drove Mr. Coleman's vehicle to 527 E. Browning (the 527 Building) at Ida B. Wells.

**ANSWER**:    Based on police department reports pertaining to plaintiff's January 4, 2003 arrest, the City denies the allegations in paragraph 41.

42.    The remaining Defendant Officer put Mr. Coleman in the police car, and took him to the 527 Building.

**ANSWER**:    Based on police department reports pertaining to plaintiff's January 4, 2003 arrest, the City denies the allegations in paragraph 42.

43.    Once inside the 527 Building, Watts, Jones, and Mr. Coleman were joined by Defendant Mohammed, and several other officers already in the lobby.

**ANSWER**:    The City denies the allegations in paragraph 43 to the extent they are inconsistent with police department reports pertaining to plaintiff's arrest on January 4, 2003. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 43.

44. Defendant Officers continued to detain him until eventually Watts pulled a bag of drugs out of his pocket and told Mr. Coleman they were his drugs.

**ANSWER**: The City denies the allegations in paragraph 44 to the extent they are inconsistent with police department reports pertaining to plaintiff's arrest on January 4, 2003. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 44.

45. Although Mr. Coleman did not have any drugs on him, Defendant Watts attributed the drugs he had just pulled out of his pocket to Mr. Coleman.

**ANSWER**: Based on police department reports pertaining to plaintiff's January 4, 2003 arrest and plaintiff's guilty plea in Case No. 03 CR 2644, the City denies the allegations in paragraph 45.

46. Mr. Coleman was falsely arrested, taken to the Area 2 Police Station at 51st and Wentworth, charged and ultimately convicted of a drug crime, and incarcerated.

**ANSWER**: Based on police department reports, the City admits plaintiff was arrested on January 4, 2003 and transported to the Second District police station. The City denies plaintiff was taken to the Area 2 police station. Based on plaintiff's guilty plea in Case No. 03 CR 2644, the City denies the allegation that plaintiff's arrest was "false."

### Mr. Coleman's OPS Complaint is Ignored

47. On or around January 14, 2003, Mr. Coleman's mother, Sandra Baker, contacted OPS to file a complaint on Mr. Coleman's behalf about his interactions with the Watts team during his January 4, 2003 arrest, including the excessive force and false arrest.

**ANSWER**: The City admits on information and belief Sandra Baker contacted OPS on January 14, 2003, to make a complaint on behalf of plaintiff regarding an alleged incident on January 4, 2003 involving him and "Sergeant Watts." The City further admits the existence of Complaint Register #287011, and refers to that file for its content. The City denies any remaining allegations contained in paragraph 47 inconsistent with the foregoing.

48.     OPS failed to adequately investigate this complaint.

**ANSWER**:     The City denies on information and belief the allegation in paragraph 48.

49.     For example, OPS failed to accurately document the details of Mr. Coleman's complaint by omitting or otherwise mischaracterizing Mr. Coleman's complaint.

**ANSWER**:     The City denies on information and belief the allegation in paragraph 49.

### Mr. Coleman's Prosecution on the January 4, 2003 Arrest

50.     The Defendant Officers prepared false and fabricated police reports related to the January 4, 2003 arrest of Mr. Coleman.

**ANSWER**:     The City is without knowledge or information of the misconduct involving plaintiff as alleged in this paragraph against the Defendant Officers. Based on plaintiff's guilty plea in Case No. 03 CR 2644, the City denies the remaining allegations in paragraph 50.

51.     On the basis of the false reports, Mr. Coleman was prosecuted for a drug crime.

**ANSWER**:     The City admits on information and belief plaintiff was prosecuted for drug crimes as a result of his January 4, 2003 arrest. Based on plaintiff's guilty plea in Case No. 03 CR 2644, the City denies the allegation that the police report was "false."

52.     Even though Mr. Coleman was innocent, knowing that he risked significant time in prison if he went to trial and lost—and that his previous attempt to expose the corruption through OPS had failed—Mr. Coleman accepted a plea deal.

**ANSWER**:     The City admits on information and belief plaintiff pleaded guilty to and was convicted of possession of a controlled substance in Case No. 03 CR 2644 following a court hearing in which Judge Stuart Palmer found that plaintiff's guilty plea was freely and voluntarily made. The City further admits on information and belief Judge Palmer advised plaintiff during that court hearing of the potential penalties he faced if he went to trial and was found guilty. The City denies the remaining allegations in paragraph 52.

53.     Mr. Coleman was sentenced to four years in prison.

**ANSWER**:     The City admits on information and belief the allegations in paragraph 53.

54.     Defendant Officers never disclosed to the prosecutors that they had fabricated evidence and falsified a police report related to Mr. Coleman's arrest.

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54.

55.     Defendant Officers never disclosed to the prosecutors any of their misconduct described herein. If the prosecutors had known that Defendant Officers fabricated evidence, and committed the other misconduct described herein, they would not have pursued the prosecution of Mr. Coleman, and his unlawful deprivation of liberty would not have been continued.

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55.

56.     Given that the entirety of the State's case against Mr. Coleman rested on Defendant Officers' fabrication of evidence–the planted drugs–and the credibility of Defendant Officers, the exculpatory evidence described in the preceding paragraphs would have been material to Mr. Coleman's defense of his criminal charges.

**ANSWER**:     The City denies the allegations as phrased in paragraph 56.

### Defendant Watts and His Team Engaged in a Pattern of Misconduct for at Least a Decade, All Facilitated by the City's Code of Silence

57.     It was no secret within CPD that Watts and his crew engaged in the type of misconduct of which Mr. Coleman accused them.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals "within CPD" to whom plaintiff is referring, or those individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph incorporating those terms. To the extent the allegations of this paragraph are intended to refer to the Defendant Officers, the City admits that CPD received information alleging Defendant Watts was engaging in criminal misconduct regarding drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a joint federally-led investigation of those allegations. The City further admits Defendant Mohammed was subsequently included as a target of the

investigation. The City denies any remaining allegations contained within paragraph 57 that are inconsistent with the foregoing.

58.     Government officials, including those with the City of Chicago, knew about Watts and his crew's alleged misconduct as early as 1999.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the "government officials" to whom plaintiff is referring, or those individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph incorporating those terms. To the extent the allegations of this paragraph are intended to refer to the named defendants, the City admits that CPD received information in 2004 alleging Defendant Watts was engaging in criminal misconduct regarding drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a joint federally-led investigation of those allegations. The City further admits Defendant Mohammed was subsequently included as a target of the investigation. The City denies the remaining allegations contained within paragraph 58 that are inconsistent with the foregoing.

59.     Shortly thereafter, an FBI investigation of Watts and his crew was underway. The FBI investigation took place with the knowledge and occasional participation of the Chicago Police Department's Internal Affairs Division.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are intended to refer to the Defendant Officers, the City admits that CPD received information in 2004 alleging Defendant Watts may be engaging in criminal misconduct regarding drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a federally-led investigation

17

of those allegations. The City admits Defendant Mohammed was subsequently included as a target of the investigation. In further response, the City states the federal government determined it would be and was in charge of the joint investigation, and that the United States Attorney's Office would control and did control the results of everything that resulted from the investigation. The City denies any remaining allegations in paragraph 59 inconsistent with the foregoing.

60.     Because IAD was kept abreast of the FBI investigation, at the times complained of, City officials—including but not limited to the head of IAD and CPD Superintendents Terry Hillard and Phillip Cline —were aware of credible allegations that Watts and his team were extorting and soliciting bribes from drug dealers.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the vague and undefined phrase "Watts and his team," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are intended to refer to the Defendant Officers, the City admits that CPD received information in 2004 alleging Defendant Watts may be engaging in criminal misconduct regarding drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a federally-led investigation of those allegations. The City further admits Defendant Mohammed was subsequently included as a target of the investigation. The City denies any remaining allegations contained within paragraph 60 that are inconsistent with the foregoing.

61.     Watts used a drug dealer named "Big Shorty" to run drugs at the Ida B. Wells complex. Big Shorty would sell the drugs, turning profits over to Watts in exchange for Watts's protection. Watts also used drug dealers as phony informants to obtain illegitimate search warrants. Watts also offered to let arrestees go if they provided him with weapons.

**ANSWER**:     The City admits the existence of an FBI 302 Report dated August 14, 2009, prepared by FBI Agent Patrick Smith, refers to that report for its content, and denies any allegations inconsistent therewith. The City admits the Report purports to reflect information obtained from Agent Smith's interview of Bernard Brown, a drug dealer, based on information allegedly provided

to Brown by other drug dealers who worked in the Second District. The City is without knowledge or information sufficient to form a belief as to the truthfulness or credibility of Mr. Brown, Mr. Brown's sources, or the information he provided to Agent Smith. The City is without knowledge or information sufficient to form a belief as to the as to the truth of the remaining allegations contained in paragraph 61.

62.     Targets of the FBI investigation extended beyond Watts to members of Watts's tactical team, including some of the Officer Defendants named herein.

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the intended meaning of the vague phrase "extended beyond." To the extent it understands the phrase, the City admits on information and belief Defendant Mohammed was subsequently included as a target of the joint, federally-led investigation of Defendant Watts. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 62.

63.     By the times complained of, the FBI investigation generated evidence showing that Watts engaged in systemic extortion, theft, the possession and distribution of drugs for money, planting drugs on subjects, and paying informants with drugs.

**ANSWER**:     The City admits that, on November 21, 2011, Defendant Watts was caught in an undercover sting operation stealing government funds he believed to be drug proceeds. The City further admits Defendant Watts pleaded guilty to and was convicted of a federal crime in 2013. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 63.

64.     Investigators also determined that Watts and his subordinates had engaged in these activities for the prior ten years.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the "investigators" to whom plaintiff is referring. To the extent the allegations of this paragraph are intended to refer to "investigators" involved in the federally-led investigation in which CPD's

IAD participated, the City admits that, on November 21, 2011, Defendants Watts and Mohammed were caught in an undercover sting operation stealing government funds they believed to be drug proceeds. The City further admits Watts (in 2013) and Mohammed (in 2012) each pleaded guilty to and was convicted of federal crimes. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 64.

**Watts and Mohammed Are Charged With Federal Crimes**

65.     In 2012, after at least a decade of engaging in criminal misconduct, Defendants Watts and Mohammed were caught red-handed, shaking down a person they thought was a drug courier, but who was actually an agent for the FBI.

**ANSWER**:     Based on federal documents, the City admits that on November 21, 2011, Defendants Watts and Mohammed were caught in an undercover sting operation stealing government funds they believed to be drug proceeds from a cooperating witness working with the FBI. The City denies on information and belief the remaining allegations in paragraph 65.

66.     The United States government subsequently charged Watts and Mohammed with federal crimes.

**ANSWER**:     The City admits the allegations contained in paragraph 66.

67.     Watts and Mohammed each pled guilty to federal criminal charges and both were sentenced to terms of imprisonment. See *United States v. Watts*, No. 12-CR-87-1 (N.D. Ill.); *United States v. Mohammed*, No. 12-CR-87-2 (N.D. Ill.).

**ANSWER**:     The City admits the allegations contained in paragraph 67.

68.     In its sentencing memorandum in the Watts case, the Government explained that "[f]or years . . . the defendant [Watts] used his badge and his position as a sergeant with the Chicago Police Department to shield his own criminal activity from law enforcement scrutiny." His crimes included "stealing drug money and extorting protection payments" from the individuals he was sworn to protect and serve.

**ANSWER**:     The City admits the existence of the "Government's Response to Defendant Ronald Watts' Sentencing Memorandum," Dkt. #84 in *United States v. Watts*, Case No. 12 CR 87-1 in the United States District Court, Northern District of Illinois, and that the first sentence of

paragraph 68 accurately quotes language from that document. The City objects to plaintiff's mischaracterization of the Government's Response in the second sentence of paragraph 68. Answering further, the City denies the quotation in the second sentence of paragraph 68 fairly or accurately presents the language of the Government's Response; the actual language from the Government's Response is that Watts "recruited another CPD officer into his crimes, stealing drug money and extorting protection payments *from the drug dealers who terrorized the community* that he, the defendant, had sworn to protect." (Emphasis added).

69. The government revealed that, for years, Defendants Watts and Mohammed extorted tens of thousands of dollars of bribes from individuals at the Ida B. Wells public housing complex on numerous occasions as part of their duties with the CPD.

**ANSWER**: The City denies the allegations as phrased in paragraph 69 and specifically denies that the extortion of bribes from drug dealers by Defendants Watts and Mohammed as alleged would have been "part of their duties with the CPD." Answering further, the City states that, if the alleged extortion of bribes is proven, that proof will establish the conduct was outside the scope of the duties of Watts and Mohammed and not subject to indemnification by the City.

70. During the sentencing hearing, the Government urged Judge Sharon Johnson Coleman to "consider the other criminal conduct that the defendant [Watts] engaged in throughout the course of his career as a police officer," specifically noting that during the federal investigation Watts "did other things such as putting a false case on the confidential source that was involved in our investigation. Watts had him arrested on drug charges. And the source . . . felt he had no chance of successfully fighting that case so he pled guilty to a crime he didn't commit." The federal prosecutor wondered aloud "how many times [Watts] might have done something similar when the government was not involved."

**ANSWER**: The City admits that a sentencing hearing for Watts occurred, admits the existence of a transcript of that hearing, and states the allegations in paragraph 70 purport to quote only a portion of that hearing. The City refers to that transcript for its content and denies any allegations in paragraph 70 inconsistent therewith.

71. Following the federal indictments of Watts and Mohammed, City officials made efforts to downplay magnitude of Watts's criminal enterprise.

**ANSWER**: The City denies the allegations contained in paragraph 71.

72. Notwithstanding the evidence that investigators had amassed over the years pointing to a wide, decade long criminal enterprise, CPD Superintendent Garry McCarthy publicly stated, "There is nobody involved other than the two officers who were arrested." As described in more detail below, that statement was not true.

**ANSWER**: The City admits former Police Superintendent Garry McCarthy was quoted in 2012 as stating, "That was a joint Chicago Police Department and FBI endeavor. At this point, there's nobody involved except the two officers who were arrested." The City denies on information and belief the remaining allegations contained in paragraph 72.

### The City's "Code of Silence"

73. While the federal government was investigating Watts and his crew, a "code of silence" existed within the Chicago Police Department.

**ANSWER**: The City denies the allegations as phrased in paragraph 73, and further states that the "code of silence" as alleged in the complaint is directly contrary to the rules, policies, and training of the CPD.

74. Under this code, police officers are expected to conceal each other's misconduct, in contravention of their sworn duties, and penalties for breaking the code of silence within the CPD are severe.

**ANSWER**: The City denies the allegations as phrased in paragraph 74, and further states that the "code of silence" as alleged in the complaint is directly contrary to the rules, policies, and training of the CPD.

75. As one CPD officer has explained, "[The Chicago Police Academy told officers] over and over again we do not break the code of silence. Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER**: The City admits on information and belief that the assertion set forth in paragraph 75 was made by one police officer, but it denies the accuracy of that statement, denies

that it had any relation to this case, and states that a "code of silence" as described therein is directly contrary to the rules, policies, and training of the CPD.

76.     Pursuant to this "code of silence," each of the Defendant Officers concealed from Mr. Coleman information that Watts and his team members were in fact engaged in a wide-ranging pattern of misconduct. Had this information been disclosed to Mr. Coleman, he would have used it to impeach the officers' accounts, which would have changed the outcome of the criminal proceedings instituted against him.

**ANSWER**:     The City denies the allegations as phrased in paragraph 76, and further states that the "code of silence" as alleged in the complaint is directly contrary to the rules, policies, and training of the CPD.

77.     Also, consistent with this "code of silence," the few people who stood up to Watts and his crew and/or attempted to report his misconduct were either ignored or punished, and Watts and his crew continued to engage in misconduct with impunity.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City denies on information and belief the remaining allegations in paragraph 77, and further states that the "code of silence" as alleged in the complaint is directly contrary to the rules, policies, and training of the CPD.

### The Careers of CPD Officers Daniel Echeverria and Shannon Spaulding Are Nearly Ruined

78.     In 2006, two Chicago police officers, Daniel Echeverria and Shannon Spaulding learned credible information from arrestees that Watts and his crew were engaged in illegal drug activity.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City is without knowledge or information sufficient to form a belief

as to the truth of the vague allegations in paragraph 78 as to what Daniel Echeverria and Shannon Spalding "learned" in 2006 from arrestees and whether that information was "credible."

79.     Officer Echeverria took the allegation seriously, and he reported it to a CPD supervisor. The supervisor made clear that he was not interested in learning about the allegation, and he directed Echeverria not to document the allegations.

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 as to what Officer Echeverria believed. The City denies on information and belief the remaining allegations in paragraph 79.

80.     Echeverria and Spaulding subsequently reported the allegations about Watts and his crew to the FBI. Soon thereafter, Echeverria and Spaulding began cooperating with the FBI, actively assisting the FBI's investigation of Watts and his crew.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City admits Daniel Echeverria and Shannon Spalding participated in aspects of the joint federally-led investigation of Defendants Watts and Mohammed. The City denies any remaining allegations contained in paragraph 80 inconsistent with the foregoing.

81.     When their cooperation became known to officers within their CPD chain of command, Spaulding and Echeverria were labeled "rats" within the Department, their lives were threatened, and they endured all manner of professional retaliation by members of the CPD.

**ANSWER**:     The City denies on information and belief the allegations as phrased in paragraph 81.

82.     Spaulding and Echeverria subsequently sued the City for the retaliation they suffered for blowing the whistle on Watts and his crew. On the eve of trial in that case, the City settled for $2 million.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph

24

incorporating that term. The City admits Echeverria and Spalding sued the City of Chicago and

that the lawsuit eventually was settled. The City denies the settlement of that lawsuit is relevant to

any issue in plaintiff's complaint, and it denies any remaining allegations in paragraph 82 that are

inconsistent with the foregoing.

### Citizen Complaints Go Nowhere

83.     Defendants Watts, Mohammed, and other members of Watts's tactical team had
accumulated scores of citizen complaints concerning violations of their civil rights over the years.
These complaints began well before the misconduct Defendants committed against Mr. Coleman,
and yet the City did nothing to stop the misconduct.

**ANSWER**:     The City admits the Defendant Officers had been the subjects of complaints

of alleged misconduct over the course of their careers. The City denies a complaint alleging

misconduct that results in the opening of a Complaint Log or Complaint Register investigation

constitutes evidence that the alleged misconduct occurred. The City denies the remaining

allegations contained in paragraph 83.

84.     On information and belief, complaints that the City bothered to investigate largely
boiled down [*sic*] a he-said-she-said between the officer and the citizen, and the City's policy to
resolve those disputes in the officers' favor, no matter how many citizens came forward with the
same type of complaint.

**ANSWER**:     The City denies the allegations as phrased in paragraph 84.

85.     The Illinois Appellate Court recently criticized the City for its utter failure to
address the Watts team misconduct.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to

the individuals that plaintiff alleges to be part of the vague and undefined term "Watts team," and

it therefore makes no further response to the allegations in this paragraph incorporating that term.

The City is without knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph regarding "criticism" from the Illinois Appellate Court, but it

specifically denies any inference or allegation that there was an "utter failure" by CPD to address

the allegations of Watts' misconduct, as the CPD's IAD participated with federal authorities in a federally-led investigation of those allegations.

86.     In multiple instances, the City actually assigned Watts to investigate complaints made against him or members of the team he supervised.

**ANSWER**:     To the extent the City understands the vague allegations in paragraph 86, the City denies on information and belief those allegations as phrased.

### The City Turns a Blind Eye to the Clear Pattern of Alleged Misconduct that Emerged from Watts and His Crew

87.     Despite all of the evidence that was amassed over the years of a pattern and practice of criminal misconduct by Defendant Officers, on information and belief, the City never undertook its own investigation of the clear pattern that emerged.

**ANSWER**:     The City denies the vague allegations contained in paragraph 87.

88.     As City officials were aware, the purpose of the FBI investigation was to investigate and prosecute criminal activity, not to impose discipline and control of the City's Police Department.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the "City officials" to whom plaintiff is referring, and it therefore makes no further response to the allegations in this paragraph incorporating those terms. To the extent the allegations of this paragraph are intended to refer to any named defendant, the City admits the purpose of the joint federally-led investigation was to investigate allegations that Watts, and later Mohammed, were involved in criminal activity. The City further states that the results of the criminal investigation could be and were used in subsequent disciplinary proceedings involving Watts and Mohammed. The City denies the remaining allegations contained in paragraph 88.

89.     Nothing about the FBI investigation relieved the City of its fundamental responsibility to supervise, discipline, and control its officers.

**ANSWER**:     Paragraph 89 asserts legal conclusions to which no response is required. In the event a response is deemed necessary: to the extent the allegations suggest or infer the City

was obligated to take actions that would have interfered with, obstructed, and/or exposed a pending confidential criminal investigation, the City denies those allegations. The City denies any remaining allegations in paragraph 89 that are inconsistent with the foregoing.

90.     Nevertheless, the City completely abdicated this responsibility, allowing the widespread misconduct to continue undeterred throughout the FBI's criminal investigation of Watts and his crew.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City denies the remaining allegations contained in paragraph 90.

91.     During the FBI investigation, which spanned at least eight years, City officials had reason to believe that Watts and his crew were committing ongoing criminal activity on the streets—extorting drug dealers and framing citizens of crimes they did not commit—yet City officials took no steps to prevent these abuses from occurring.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the "City officials" to whom plaintiff is referring, or those individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph incorporating those terms. To the extent the allegations of this paragraph are intended to refer to named defendants, the City denies the allegations as phrased in paragraph 91.

92.     Instead, City officials let officers on Watts's crew continue to pursue criminal charges against citizens like Mr. Coleman and to testify falsely against citizens like Mr. Coleman.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the "City officials" to whom plaintiff is referring, or those individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts's crew," and it therefore makes no further response to the allegations in this paragraph incorporating those terms. To the extent the allegations suggest or infer the City was obligated to take actions that would have interfered with,

27

obstructed, and/or exposed a pending confidential criminal investigation, those allegations are denied. To the extent the allegations of this paragraph are intended to refer to the Defendant Officers, the City is without knowledge or information sufficient to form a belief as to the truth of the allegation that they testified "falsely," and it denies the remaining allegations as phrased in paragraph 92.

93.    City officials withheld information they had about the officers' pattern of transgressions, information that citizens like Mr. Coleman could have used to impeach the corrupt officers and defend against the bogus criminal charges placed upon them.

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the "City officials" to whom plaintiff is referring, and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations suggest or infer the City was obligated to take actions that would have interfered with, obstructed, and/or exposed a pending confidential criminal investigation, those allegations are denied. The City denies on information and belief the remaining allegations as phrased in paragraph 93.

### Mr. Coleman's Exoneration

94.    After Defendant Watts and his crew's corruption came to light, on September 12, 2017, a group of similarly-situated innocent victims filed a Consolidated Petition for Relief From Judgment and To Vacate Convictions Pursuant to 735 ILCS 5/2-1401 (Consolidated Petition).

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his crew," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent that phrase is intended to refer to the Defendant Officers, the City admits federal documents reflect that on November 21, 2011, Watts and Mohammed were caught in an undercover sting operation stealing government funds they believed to be drug proceeds. The City further admits the existence of a consolidated petition for relief from judgment and to vacate convictions that purportedly was filed on September 12, 2017 on behalf of certain

individuals. The City denies on information and belief plaintiff and those petitioners were "similarly-situated innocent victims," and it denies the remaining allegations in paragraph 94.

95.     On November 16, 2017, upon the State's motion, Judge LeRoy K. Martin, Jr. vacated and *nolle prossed* all of the convictions related to the Consolidated Petition.

**ANSWER**:     The City admits on information and belief that on or around November 16, 2017, the Cook County Circuit Court entered an order vacating the convictions of the individuals bringing the consolidated petition. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

96.     In commenting on the extraordinary decision to agree to vacate all of the convictions, head of Cook County State's Attorney's Office's Conviction Integrity Unit Mark Rotert stated that, "In these cases, we concluded, unfortunately, that police were not being truthful and we couldn't have confidence in the integrity of their reports and their testimony."

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 96.

97.     On September 24, 2018, 18 other similarly-situated innocent victims were given a semblance of justice. Upon the State's motion, Judge LeRoy K. Martin, Jr. vacated 23 convictions, including Mr. Coleman's, and the State *nolle prossed* all charges related to the convictions.

**ANSWER**:     The City admits on information and belief plaintiff's conviction in Case No. 03 CR 2644 was vacated on September 24, 2018. Based on plaintiff's guilty plea in that case, the City denies plaintiff was an "innocent victim." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 97.

98.     Following this decision, Mr. Rotert explained "these arrests were purely conjured . . . [Watts and his team] were basically arresting people and framing them or were claiming they were involved in drug offenses that either didn't occur or didn't occur the way these police officers said."

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff (or Mr. Rotert) alleges to be part of the vague and undefined parenthetical term "Watts and his team," and it therefore makes no further response to the

allegations in this paragraph incorporating that term. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 98.

99.     At a press conference where she stood with the 18 exonerated men, CCSAO elected State's Attorney Kim Foxx stated that "[t]he system owes an apology to the men who stand behind us."

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 99.

100.     On November 2, 2018, seven more victims had eight additional convictions voluntarily dismissed by the CCSAO.

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100.

101.     In a Press Release, CCSAO Foxx stated that Watts and his team's "pattern of misconduct" has caused her "to lose confidence in the initial arrests and the validity of these convictions."

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the vague and undefined term "Watts and his team," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 101.

102.     Referring to the exonerees as "victims," Ms. Foxx wished them "a path forward in healing and justice."

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 102.

103.     As of today's date, 63 men and women have had 82 convictions dismissed due to Watts and his team's misconduct.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the vague and undefined term "Watts and his

team," and it therefore makes no further response to the allegations in this paragraph incorporating that term. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 103.

104.     All 63 of these men and women, including Mr. Coleman, have been found factually innocent of the charges and most, including Mr. Coleman, have been certified innocent.

**ANSWER**:     The City admits on information and belief the Circuit Court of Cook County granted plaintiff a Certificate of Innocence in Case No. 03 CR 2644, but it denies the certificate has any relevant legal bearing on this case. The City denies any allegation in this paragraph that is inconsistent with the foregoing. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 104.

105.     The CCSAO will no longer call certain member of Watts's crew as witnesses in any pending or future matters because of their credibility concerns and alleged involvement in misconduct.

**ANSWER**:     The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts's crew," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are intended to refer to the Defendant Officers, the City admits the existence of correspondence dated November 17, 2017, from Joe Magats, Chief of the Criminal Prosecutions Bureau of the CCSAO, to CPD's Office of Legal Affairs, in which he stated the CCSAO would no longer call certain individuals as potential witnesses in matters handled by the CCSAO "due to concerns about their credibility and alleged involvement in the misconduct of Sergeant Watts." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 105, as the CCSAO did not respond to CPD's request for information regarding the basis for the CCSAO's decision.

106.    In November 2017, the Superintendent of the Chicago Police Department, Eddie T. Johnson, placed some of the Defendant Officers named herein, along with other members of Watts's crew, on desk duty pending further investigations into their misconduct.

**ANSWER**:    The City lacks knowledge or information sufficient to form a belief as to the individuals that plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts's crew," and it therefore makes no further response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are intended to refer to the Defendant Officers, the City admits "some" were assigned to administrative duty by CPD on or around November 17, 2017.

107.    On November 2, 2018, Mr. Coleman received a certificate of innocence for his 2003 conviction.

**ANSWER**:    The City admits on information and belief the allegation in paragraph 107.

### Mr. Coleman's Damages

108.    Because of the Defendants acts and omissions, Mr. Coleman lost years of his life to wrongful imprisonment and was subjected to police harassment, physical injury, and unfair criminal proceedings before he was finally exonerated.

**ANSWER**:    The City denies liability to plaintiff for any of the claims and/or damages asserted in the complaint. Further answering, the City lacks knowledge or information of Defendant Officers' alleged misconduct involving plaintiff as asserted in the complaint. Based on police department reports and court documents that reflect plaintiff's guilty plea, the City denies the allegation that plaintiff's imprisonment was "wrongful." The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 108.

109.    The physical and emotional pain and suffering caused by being wrongfully incarcerated has been significant. Mr. Coleman was deprived of the everyday pleasures of basic human life; his freedom was taken from him. Since then, Mr. Coleman has had to live with a felony record he did not deserve.

**ANSWER**:    The City denies liability to plaintiff for any of the claims and/or damages asserted in the complaint. Further answering, the City lacks knowledge or information of

Defendant Officers' alleged misconduct involving plaintiff as asserted in the complaint. Based on police department reports and court documents that reflect plaintiff's guilty plea, the City denies the allegation that plaintiff was "wrongfully" incarcerated. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 109.

110.    As a result of the foregoing, Mr. Coleman has suffered physical injury and severe emotional damages, all proximately caused by Defendants' misconduct.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the "foregoing" paragraphs, the City adopts and restates its prior answers and responses thereto. The City denies the remaining allegations as phrased in paragraph 110.

**Count I: 42 U.S.C. § 1983 — Due Process**

In accordance with the Joint Stipulation filed in *In re: Watts Coordinated Pretrial Proceedings*, Master Docket Case No. 19 C 1717 (Dkt. #186), the City adopts and incorporates as part of its responsive pleadings in this matter the representative Joint Motion to Dismiss Certain Claims in Loevy Plaintiffs' Complaints (Dkt. #170 on the Master Docket) to the extent applicable to the claims in Count I. Without waiving its right to challenge the legal sufficiency of the claim in Count I through this answer, and preserving any and all rights to appeal, the City further responds as follows:

111.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER**:    The City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 111 as though fully set forth herein.

112.    In the manner described more fully above, Defendant Officers, while acting as investigators, individually, jointly, and in conspiracy with each other, deprived Plaintiff of his constitutional right to due process and a fair trial.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City denies on information and belief the remaining allegations contained in paragraph 112.

113.    In the manner described more fully above, Defendant Officers deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, as well as knowingly fabricated false evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City denies on information and belief the remaining allegations contained in paragraph 113.

114.    Likewise, in the manner described more fully above, Defendants Terry Hillard, Phillip Cline, Debra Kirby, Karen Rowan and other as-yet-unidentified CPD supervisors, had knowledge of a pattern of misconduct by Watts and his team. These Defendant Supervisory Officers knew of a substantial risk that Watts and his team would violate the rights of Mr. Coleman and other residents and visitors of the Ida B. Wells complex, and they deliberately chose a course of action that allowed those abuses to continue, thereby condoning those abuses.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City admits that CPD received information alleging Defendants Watts and Mohammed were engaging in criminal misconduct regarding drug dealers at the Ida B. Wells housing complex, and that CPD's IAD participated with federal authorities in a federally-led investigation of those allegations. The City denies the remaining allegations contained in paragraph 114.

115.    The constitutional injuries complained of herein were proximately caused by the intentional misconduct of Defendant Supervisory Officers, or were proximately caused when Defendant Supervisory Officers were deliberately, recklessly indifferent to their subordinates' misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Plaintiff's constitutional rights.

**ANSWER**:    The City denies the allegations contained in paragraph 115.

116.    In addition, Defendant Supervisory Officers themselves concealed exculpatory evidence from Mr. Coleman—specifically information about Watts and his team's pattern of misconduct. In this way, Defendant Supervisory Officers violated Mr. Coleman's due process right to a fair trial deliberately and with reckless disregard to Mr. Coleman's rights.

**ANSWER**:      The City denies the allegations contained in paragraph 116.

117.    Defendants' misconduct directly resulted in the unjust criminal convictions of Plaintiff, thereby denying his constitutional right to due process and a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

**ANSWER**:      The City denies the allegations contained in paragraph 117.

118.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Mr. Coleman's clear innocence.

**ANSWER**:      The City denies the allegations contained in paragraph 118.

119.    Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER**:      The City objects to this paragraph, which consists of the blanket assertion that each of the individual defendants was acting within the scope of his or her employment and under color of state law in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, this paragraph asserts legal conclusions to which no answer is required. To the extent an answer is deemed necessary, the City denies the alleged commission of crimes by certain individual defendant officers as alleged in the complaint would be within the scope of a CPD police officer's employment. The City lacks knowledge or information of any misconduct involving plaintiff as alleged against the Defendants in the complaint. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained within paragraph 119.

120.    The City of Chicago is also directly liable for the injuries described in this Count because the City and CPD maintained official policies and customs that were the moving force behind the violation of Plaintiff's rights and also because the actions of the final policymaking officials for Defendant City of Chicago and CPD were the moving force behind the violation of Plaintiff's rights.

**ANSWER**:     The City denies the allegations contained in paragraph 120.

121.     At all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Chicago maintained a system that violated the due process rights of criminal defendants like Mr. Coleman by concealing exculpatory evidence of Chicago police officers' patterns of misconduct.

**ANSWER**:     The City denies the allegations contained in paragraph 121.

122.     In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Chicago had notice of a widespread practice by its officers and agents under which criminal suspects, such as Mr. Coleman, were routinely deprived of exculpatory evidence, were subjected to criminal proceedings based on false evidence, and were deprived of liberty without probable cause, such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved.

**ANSWER**:     The City denies the allegations contained in paragraph 122.

123.     As a matter of both policy and practice, Defendant City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control, and discipline its police officers, such that its failure to do so manifests deliberate indifference. Defendant City's actions lead police officers in the City of Chicago to believe that their actions will never be scrutinized and, in that way, directly encourage further abuses such as those that Mr. Coleman endured.

**ANSWER**:     The City denies the allegations contained in paragraph 123.

124.     The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the City of Chicago, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. These widespread practices were allowed to flourish because Defendant City and the CPD declined to implement sufficient policies or training, even though the need for such policies and training was obvious. Defendant City and the CPD also declined to implement any legitimate mechanism for oversight or punishment of officers, thereby leading officers to believe that they could violate citizens' constitutional rights with impunity.

**ANSWER**:     The City denies the allegations contained in paragraph 124.

125.     Furthermore, the misconduct described in this Complaint was undertaken pursuant to the policy and practices of Defendant City in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Chicago and the CPD, or were actually committed by persons with such final policymaking authority.

**ANSWER**:     The City denies the allegations contained in paragraph 125.

126.    Indeed, municipal policymakers have long been aware of Defendant City's policy and practice of failing to properly train, monitor, investigate, and discipline misconduct by its police officers, but have failed to take action to remedy the problem.

**ANSWER**:    The City denies the allegations contained in paragraph 126.

127.    For example, at a City Council hearing on September 28, 1999, in response to two high-profile unjustified police shootings, Superintendent Terry Hillard noted the need for better in-service training on the use of force, early detection of potential problem officers, and officer accountability for the use of force.

**ANSWER**:    The City admits Terry Hillard served as Superintendent of Police for the CPD in September 1999. The City further admits then-Superintendent Hillard gave a speech on September 28, 1999 in which, upon information and belief, he discussed new training initiatives; refers to that speech for its content; and denies all allegations inconsistent therewith. The City denies Mr. Hillard's comments provide an "example" or acknowledgment of a constitutionally deficient City policy or practice. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 127.

128.    In June 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

**ANSWER**:    The City admits in January 2000, then-Alderman William Beavers, then Chairman of the Committee on Police and Fire of the Chicago City Council, proposed a resolution that stated, in part, "police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct." The City denies any remaining allegations contained within paragraph 128 that are inconsistent with the foregoing.

129.    In 2001, the Justice Coalition of Greater Chicago (JCGC), a coalition of more than a hundred community groups, confirmed the findings of that resolution, concluding that the CPD lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct. The JCGC findings were presented to Mayor Daley, Superintendent Hillard, and the Chicago Police Board.

**ANSWER**:    The City objects to the allegations in this paragraph regarding the JCGC "findings" as vague and incomplete. The City is without knowledge or information sufficient to form a belief as to the truth of the vague allegations contained in paragraph 129 concerning the JCGC and its purported "confirmation" of the findings of a resolution. To the extent a further response is required: the City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 129.

130.    Despite the municipal policymakers' knowledge of the City's failed policies and practices to adequately train, supervise, investigate, discipline, and control its police officers, nothing was done to remedy these problems.

**ANSWER**:    The City denies the allegations contained in paragraph 130.

131.    As a result, the CPD has continued to respond to complaint of police misconduct inadequately and with undue delay, and to recommend discipline in a disproportionately small number of cases.

**ANSWER**:    The City denies the allegations contained in paragraph 131.

132.    Indeed, by its own admissions, more than 99% of the time when a citizen complains that his or her civil rights were violated by police officers, the City sides with the police officer and concludes that no violation occurred.

**ANSWER**:    The City denies on information and belief the vague allegations contained in paragraph 132.

133.    Notably, Defendant Watts and his crew were not the first Chicago police officers who were allowed to abuse citizens with impunity over a period of years while the City turned a blind eye.

**ANSWER**:    The City denies the allegations contained in paragraph 133.

134.    For instance, in 2001, Chicago police officer Joseph Miedzianowski was convicted on federal crime charges, including racketeering and drug conspiracy. The jury found that Miedzianowski engaged in corruption for much of his 22-year police career, using street informants to shake down drug dealers and sell drugs.

**ANSWER**:    The City admits on information and belief Joseph Miedzianowski was convicted in 2001 on federal criminal charges including racketeering and conspiracy; refers to the

court docket of that case for a description of the charges and their resolutions; and denies any allegations inconsistent therewith. The City denies the allegations pertaining to Miedzianowski are evidence of any alleged widespread practice and denies the relevance of those allegations to the claims in plaintiff's complaint. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 134.

135.     Miedzianowski, like Defendant Officers in this case, had accumulated scores of complaints over the years. As the Appellate Court has stated, the Defendant City, "did nothing to slow down the criminals. Instead, it informed the corrupt officers about the complaint and named the source" while ignoring evidence to the contrary. The Defendant City deemed such complaints unfounded or not sustained.

**ANSWER**:     The City is without knowledge or information sufficient to form a belief as to the meaning of the vague terms "scores" and "such complaints." The City admits on information and belief Defendant Officers, as well as Miedzianowski, had been the subjects of complaints of alleged misconduct over the course of their careers. The City denies a complaint against an officer alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation constitutes evidence that the alleged misconduct occurred. As to the allegations in this paragraph pertaining to the Illinois Appellate Court, the City admits the existence of *People v. Glenn*, 2018 IL App (1st) 161331, refers to that Opinion for its content, and denies all allegations to the contrary. The City specifically denies any inference or allegation that CPD "did nothing" regarding the allegations of Watts' misconduct, as the CPD's IAD participated with federal authorities in a federally-led investigation of those allegations. Further answering, the City states the selected language from the appellate court quoted above was referring to OPS; the opinion makes no reference to IAD or IAD's participation in the joint federally-led investigation of Watts and Mohammed. The City denies any allegations in paragraph 135 inconsistent with the foregoing.

136.     Likewise, in 2011, Chicago police officer Jerome Finnigan was convicted and sentenced on federal criminal charges, including a charge of attempting to hire someone to kill a

police officer who Finnigan believed would be a witness against him on his own corruption charges in state court.

**ANSWER**: The City admits former police officer Jerome Finnigan was convicted and sentenced on criminal charges in 2011, and it admits on information and belief one of the charges against Finnigan was based on his alleged attempt to hire someone to kill a police officer whom Finnigan understood might be a potential witness against him in criminal proceedings. The City denies the allegations pertaining to Finnigan are evidence of any alleged widespread practice and denies the relevance of those allegations to the claims in plaintiff's complaint. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 136.

137. Finnigan was part of a group of officers in Defendant City's Special Operations Section who carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

**ANSWER**: The City admits Jerome Finnigan and other members of the CPD's Special Operations Section were convicted of various criminal charges. The City denies any remaining allegations contained in paragraph 137 that are inconsistent with the foregoing.

138. Finnigan and his crew engaged in their misconduct at about the same time that Mr. Coleman was targeted by Defendant Watts and his crew.

**ANSWER**: The City lacks knowledge or information sufficient to form a belief as to identities of the individuals that plaintiff alleges to be part of Finnigan's "crew" or "Watts and his crew." To the extent there are any allegations that remain in paragraph 138, the City lacks knowledge or information sufficient to form a belief as to the truth of those allegations.

139. Finnigan, like Defendant Officers in this case, had accumulated scores of citizen complaints over the years, which Defendant City routinely deemed unfounded or not sustained.

**ANSWER**: The City admits on information and belief that the Defendant Officers, as well as Finnigan, had been the subjects of complaints of alleged misconduct over the course of

their careers. The City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation constitutes evidence that the alleged misconduct occurred. The City denies any remaining allegations contained in paragraph 139.

140.    At his sentencing hearing in 2011, Finnigan stated, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER**:    The City admits Finnigan made a statement at his sentencing hearing and refers to the transcript of that statement for its content. The City is without knowledge or information sufficient to form a belief as to the truthfulness of Finnegan's statement or the truthfulness, credibility, or motives of Finnegan in making the statement.

141.    In the case of *Klipfel v. Bentsen*, No. 94-cv-6415 (N.D. Ill), a federal jury found that, as of 1994, the CPD maintained a code of silence that facilitated misconduct committed by Miedzianowski.

**ANSWER**:    The City admits the jury entered a verdict against it in *Klipfel v. City of Chicago*, Case No. 94 C 6415; refers to the court docket of that case for its resolution; and denies any allegations inconsistent therewith. Further answering, the City denies the *Klipfel* verdict is applicable to the facts and circumstances alleged in the complaint. The City denies any remaining allegations in paragraph 141 inconsistent with the foregoing.

142.    Likewise, in the case of *Obrycka v. City of Chicago et al*., No. 07 CV 2372 (N.D. Ill.), a jury found that as of February 2007 "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER**:    The City admits the jury entered a verdict against it in *Obrycka v. City of Chicago, et al.*, Case No. 07 C 2372, but states that the District Court in *Obrycka* subsequently noted the basis for the jury's verdict was "unclear" and was "based on the unique facts of [that] case." *Id*., Mem. Op. & Order, Dkt. #712, at 10. Further answering, the City denies the *Obrycka* case is applicable to the facts and circumstances alleged in the complaint.

143.    The same constitutionally-defective oversight system in place during the time periods at issue in the *Klipfel* case and in the *Obrycka* case were also in place during the times complained of herein.

**ANSWER**:    The City denies the allegations contained in paragraph 143.

144.    The same code of silence in place at the CPD during the time periods at issue in the *Klipfel* case and in the *Obrycka* case were also in place during the times complained of herein.

**ANSWER**:    The City denies the allegations contained in paragraph 144.

145.    Indeed, the problems found to exist by the jury in *Klipfel* and *Obrycka* continue to this day. In December 2015, Mayor Rahm Emanuel acknowledged that a "code of silence" exists within the Chicago Police Department that encourages cover-ups of police misconduct, and that the City's attempts to deal with police abuse and corruption have never been adequate.

**ANSWER**:    The City admits that on December 9, 2015, Mayor Rahm Emanuel stated, in part, the following: "This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny, or in some cases cover-up the bad actions of a colleague or colleagues." The City denies that any "code of silence" within the CPD is pervasive, widespread, or a well-settled custom or practice to which the City's final policymakers have been deliberately indifferent. Further responding, the City states any "code of silence" is directly contrary to the rules, policies, and training of the CPD.

146.    The policies, practices, and customs set forth above were the moving force behind the constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

**ANSWER**:    The City denies the allegations contained in paragraph 146.

147.    Defendant City's investigation of complaints is characterized by unreasonably long delays, despite the relatively straightforward nature of many misconduct claims.

**ANSWER**:    The City denies the allegations contained in paragraph 147.

148.    Although Defendant City has long been aware that its supervision, training, and discipline of police officers is entirely inadequate, it has not enacted any substantive measures to address that deficiency.

**ANSWER**:    The City denies the allegations contained in paragraph 148.

149.    Instead, Defendant City continues to inadequately investigate citizen complaints and continues to fail to take action against officers when such action is necessary. It has also failed to modify its officer training programs to reduce misconduct against Chicago residents or to implement a system to identify and track repeat offenders, districts, or units.

**ANSWER**:    The City denies the allegations contained in paragraph 149.

150.    Plaintiff's injuries were caused by CPD officers, agents, and employees of Defendant City of Chicago, including but not limited to the individually named Defendants, who acted pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**ANSWER**:    The City denies the allegations contained in paragraph 150.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count I, and for its costs and such further relief as this Court deems just.

### Count II: 42 U.S.C. § 1983 — Fourth Amendment Claim

In accordance with the Joint Stipulation filed in *In re: Watts Coordinated Pretrial Proceedings*, Master Docket Case No. 19 C 1717 (Dkt. #186), the City adopts and incorporates as part of its responsive pleadings in this matter the representative Joint Motion to Dismiss Certain Claims in Loevy Plaintiffs' Complaints (Dkt. #170 on the Master Docket) to the extent applicable to the claims in Count II. Without waiving its right to challenge the legal sufficiency of the claim in Count II through this answer, and preserving any and all rights to appeal, the City further responds as follows:

151.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER**:    The City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 151 as though fully set forth herein.

152.    In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with each other, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

**ANSWER**:   To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City denies on information and belief the remaining allegations in paragraph 152.

153.   In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

**ANSWER**:   The City denies on information and belief the allegations contained in paragraph 153.

154.   The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

**ANSWER**:   The City denies on information and belief the allegations contained in paragraph 154.

155.   Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of liberty.

**ANSWER**:   The City denies the allegations contained in paragraph 155.

156.   In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent, through Defendants' fabrication and suppression of evidence.

**ANSWER**:   The City denies on information and belief the allegations contained in paragraph 156.

157.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Plaintiff's clear innocence.

**ANSWER**:   The City denies on information and belief the allegations as phrased in paragraph 157.

158.   The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER**:    The City objects to this paragraph, which consists of the blanket assertion that each of the individual defendants was acting within the scope of his or her employment and under color of state law in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, this paragraph asserts legal conclusions to which no answer is required. To the extent an answer is deemed necessary, the City denies the alleged commission of crimes by certain individual defendant officers as alleged in the complaint would be within the scope of a CPD police officer's employment. The City lacks knowledge or information of any misconduct involving plaintiff as alleged against the Defendants in the complaint. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained within paragraph 158.

159.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER**:    The City denies the allegations as phrased in paragraph 159.

160.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City denies the remaining allegations in paragraph 160.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count II, and for its costs and such further relief as this Court deems just.

### Count III: 42 U.S.C. § 1983 — Failure to Intervene

161.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER**:    The City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 161 as though fully set forth herein.

162.    In the manner described more fully above, during the constitutional violations described herein, Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City denies the remaining allegations as phrased in paragraph 162.

163.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Plaintiff's innocence.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City denies the remaining allegations as phrased in paragraph 163.

164.    The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER**:    The City objects to this paragraph, which consists of the blanket assertion that each of the individual defendants was acting within the scope of his or her employment and under color of state law in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, this paragraph asserts legal conclusions to which no answer is required. To the extent an answer is deemed necessary, the City denies the alleged commission of crimes by certain individual defendant officers as alleged in the complaint would be within the scope of a CPD police

officer's employment. The City lacks knowledge or information of any misconduct involving

plaintiff as alleged against the Defendants in the complaint. The City is without knowledge or

information sufficient to form a belief as to the truth of any remaining allegations contained within

paragraph 164.

165.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER**:     The City denies the allegations as phrased in paragraph 165.

166.     Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER**:     The City denies the allegations as phrased in paragraph 166.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any

judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and

against plaintiff on Count III, and for its costs and such further relief as this Court deems just.

**Count IV: 42 U.S.C. § 1983 — Conspiracy to Deprive Constitutional Rights**

167.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER**:     The City adopts and restates its answers and responses to each paragraph of

the complaint as and for its answer and response to paragraph 167 as though fully set forth herein.

168.     Prior to Plaintiff's conviction, all of the Defendant Officers, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights, all as described above.

**ANSWER**:     To the extent this paragraph refers to or relies on allegations made in the

preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The

City denies knowledge or information of the conspiracy alleged in this count against the Defendant

Officers. The City denies on information and belief the remaining allegations in paragraph 168.

169.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability by depriving Plaintiff of his rights.

**ANSWER**:     To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City denies knowledge or information of the conspiracy alleged in this count against the Defendant Officers. The City denies on information and belief the remaining allegations in paragraph 169.

170.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER**:     The City denies knowledge or information of the conspiracy alleged in this count against the Defendant Officers. The City denies on information and belief the remaining allegations in paragraph 170.

171.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Plaintiff's innocence.

**ANSWER**:     The City lacks knowledge or information of the misconduct alleged in this count against the Defendant Officers. The City denies on information and belief the remaining allegations in paragraph 171.

172.     The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER**:     The City objects to this paragraph, which consists of the blanket assertion that each of the individual defendants was acting within the scope of his or her employment and under color of state law in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, this paragraph asserts legal conclusions to which no answer is required. To the extent an answer is deemed necessary, the City denies the alleged commission of crimes by certain

individual defendant officers as alleged in the complaint would be within the scope of a CPD police officer's employment. The City lacks knowledge or information of any misconduct involving plaintiff as alleged against the Defendants in the complaint. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained within paragraph 172.

173.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER**:    The City denies the allegations as phrased in paragraph 173.

174.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER**:    The City denies the allegations as phrased in paragraph 174.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count IV, and for its costs and such further relief as this Court deems just.

### Count V: Illinois Law — Malicious Prosecution

The City is not a party defendant from which plaintiff seeks relief in Count V. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff re-alleges and incorporates these paragraphs in later counts against the City. In answering this Count, the City presumes all references to "Defendants" do not include the City.

175.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER**:    The City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 175 as though fully set forth herein.

176.    In the manner described more fully above, Defendants accused Plaintiff of criminal activity and exerted influence to initiate, continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

49

**ANSWER**:     The City denies the allegations as phrased in paragraph 176.

177.    In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER**:     The City denies the allegations as phrased in paragraph 177.

178.    The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER**:     The City objects to this paragraph, which consists of the blanket assertion that each of the individual defendants was acting within the scope of his or her employment and under color of state law in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, this paragraph asserts legal conclusions to which no answer is required. To the extent an answer is deemed necessary, the City denies the alleged commission of crimes by certain individual defendant officers as alleged in the complaint would be within the scope of a CPD police officer's employment. The City lacks knowledge or information of any misconduct involving plaintiff as alleged against the Defendants in the complaint. The City is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained within paragraph 178.

179.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER**:     The City denies the allegations as phrased in paragraph 179.

**Count VI: Illinois Law — Intentional Infliction of Emotional Distress**

The City is not a party defendant from which plaintiff seeks relief in Count VI. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff

re-alleges and incorporates these paragraphs in other counts against the City. In answering this Count, the City presumes all references to "Defendants" do not include the City.

180.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER**:    The City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 180 as though fully set forth herein.

181.    The actions, omissions, and conduct of Defendant Officers, as set forth above, were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City lacks knowledge or information of any misconduct involving plaintiff as alleged against the Defendant Officers in the complaint. The City denies on information and belief the remaining allegations in paragraph 181.

182.    The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER**:    The City objects to this paragraph, which consists of the blanket assertion that each of the individual defendants was acting within the scope of his or her employment and under color of state law in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, this paragraph asserts legal conclusions to which no answer is required. To the extent an answer is deemed necessary, the City denies the alleged commission of crimes by certain individual defendant officers as alleged in the complaint would be within the scope of a CPD police officer's employment. The City lacks knowledge or information of any misconduct involving plaintiff as alleged against the Defendants in the complaint. The City is without knowledge or

information sufficient to form a belief as to the truth of any remaining allegations contained within paragraph 182.

183.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER**:    The City denies the allegations as phrased in paragraph 183.

### Count VII: Illinois Law — Civil Conspiracy

The City is not a party defendant from which plaintiff seeks relief in Count VII. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff re-alleges and incorporates these paragraphs in other counts against the City. In answering this Count, the City presumes all references to "Defendants" do not include the City.

184.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER**:    The City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 184 as though fully set forth herein.

185.    As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of his rights.

**ANSWER**:    To the extent this paragraph refers to or relies on allegations made in the preceding paragraphs, the City adopts and restates its prior answers and responses thereto. The City denies knowledge or information of the conspiracy alleged in this count against the Defendants. The City therefore denies on information and belief the remaining allegations in paragraph 185.

186.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER**: The City denies knowledge or information of the conspiracy alleged in this count against the Defendants, and it therefore denies the allegations in paragraph 186.

187. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Plaintiff's innocence.

**ANSWER**: The City denies the allegations as phrased in paragraph 187.

188. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER**: The City denies the allegations as phrased in paragraph 188.

### Count VIII: Illinois Law — *Respondeat Superior*

189. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER**: The City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 189 as though fully set forth herein.

190. While committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

**ANSWER**: The City objects to this paragraph, which consists of the blanket assertion that each of the individual defendants was acting within the scope of his or her employment and under color of state law in engaging in the actions alleged, on the basis that it is vague and confusing, potentially incorporating several legal theories and different allegations of conduct against all of the defendants without asserting specific conduct against specific individuals. Further, this paragraph asserts legal conclusions to which no answer is required. To the extent an answer is deemed necessary, the City denies the alleged commission of crimes by certain individual defendant officers as alleged in the complaint would be within the scope of a CPD police officer's employment. The City admits that at various times, Ronald Watts, Kallatt Mohammed, Brian Bolton, Kenneth Young, Jr., Darryl Edwards, Matthew Cadman, Michael Spaargaren,

Gerome Summers, Jr., Calvin Ridgell, and Alvin Jones were employed by the CPD as police officers. The City denies all of the individual defendants were employed by CPD or acted as CPD employees during the entire time period contemplated in the complaint. The City lacks knowledge or information of any misconduct involving plaintiff as alleged against the Defendant Officers in the complaint. The City denies the remaining allegations in paragraph 190.

191.    Defendant City of Chicago is liable as principal for all torts committed by their agents.

**ANSWER**:    The City denies the allegations as phrased in paragraph 191.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count VIII, and for its costs and such further relief as this Court deems just.

### Count IX: Illinois Law — Indemnification

192.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER**:    The City adopts and restates its answers and responses to each paragraph of the complaint as and for its answer and response to paragraph 192 as though fully set forth herein.

193.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment.

**ANSWER**:    This paragraph alleges legal conclusions to which no response is required. To the extent a response is deemed necessary, the City admits the existence of 745 ILCS 10/9-102; refers to it for its content; denies all allegations inconsistent therewith; denies any liability to plaintiff pursuant to that statute; and denies any remaining allegations contained in paragraph 193.

194.    Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

**ANSWER**:    Paragraph 194 asserts legal conclusions to which no answer is required. To the extent an answer is deemed necessary, the City denies the alleged commission of crimes by

certain individual defendant officers as alleged in the complaint would be within the scope of a CPD police officer's employment. The City admits that at various times, Defendant Officers Watts, Mohammed, Bolton, Young, Edwards, Cadman, Spaargaren, Summers, Ridgell, and Jones were employed as police officers by the CPD. The City denies each of the Defendant Officers acted as a CPD employee during the entire time period contemplated in the complaint. In further response, the City lacks knowledge or information of any misconduct involving plaintiff as alleged against the Defendant Officers in the complaint. The City denies the remaining allegations in paragraph 194.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count IX, and for its costs and such further relief as this Court deems just.

## **AFFIRMATIVE DEFENSES**

Defendant, City of Chicago, without prejudice to its denials and all other statements in its answer and elsewhere, for its affirmative defenses to plaintiff's complaint, states:

1.      To the extent individual employees of the City or its police department are not liable as alleged in the complaint, the City would not be liable.  745 ILCS 10/2-109.

2.      The City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

3.      Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person.  745 ILCS 10/2-204.

4.      Plaintiff's claims in the complaint are barred by the applicable statutes of limitations.

5.      Plaintiff's claims in the complaint are barred by the doctrines of *res judicata* and collateral estoppel.

6.      The City of Chicago is immune from the imposition of punitive damages under both state and federal law.  Punitive damages cannot be imposed against a municipality in a §1983 action.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee.  745 ILCS 10/2-102.

7.      As to plaintiff's state law claims, the City is not liable to pay attorney's fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'"  *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

8.      To the extent any injuries or damages claimed by plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of plaintiff (including his criminal drug dealing and his guilty plea), any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to plaintiff by the jury in this case.

9.      To the extent plaintiff failed to mitigate any of his claimed injuries or damages, including by his criminal misconduct and voluntary guilty plea, any verdict or judgment obtained by plaintiff must be reduced by application of the principle a plaintiff has a duty to mitigate his or her damages.

10.     Any recovery of damages by plaintiff against the City is barred by the doctrine of *in pari delicto*.

11.     Plaintiff's complaint fails to state cognizable claims for relief against the City:

a.  Plaintiff's fabrication of evidence claim in Count I is not actionable as a due process claim because the evidence allegedly fabricated was not introduced against him at trial and did not cause his convictions;

b.  Even if otherwise actionable, plaintiff's guilty plea defeats his fabrication of evidence claim;

c.  Plaintiff has not alleged a viable *Brady* claim in Count I;

d.  To the extent Count II asserts Fourteenth Amendment due process claims based on any pre-trial deprivation of liberty or attempts federal malicious prosecution claims, those claims are not actionable as a matter of law;

e.  Plaintiff's derivative failure to intervene and conspiracy claims are not actionable;

f.  Plaintiff's Fourth Amendment claim for detention without probable cause is time-barred; and

g.  Plaintiff's state law malicious prosecution and intentional infliction of emotional distress claims are time-barred.

To the extent plaintiff's constitutional claims in the complaint fail to state actionable claims, his *Monell* claim against the City likewise fails to state an actionable claim. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) (Where a plaintiff cannot establish a constitutional violation, he has no claim against the municipality).

12.  To the extent plaintiff proves the allegations that assert criminal conduct against the individual Defendant Officers, such acts would be outside the scope of employment of a police officer and the City would not be liable for those acts as a matter of law.

## JURY DEMAND

Defendant City of Chicago respectfully requests a trial by jury.

Dated: October 27, 2021

Respectfully submitted,

CELIA MEZA

Corporation Counsel of the City of Chicago

By: *s/ Paul A. Michalik*
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Katherine Morrison
Daniel J. Burns
Dhaviella N. Harris
Reiter Burns LLP
311 South Wacker Dr., Suite 5200
Chicago, IL 60606
(312) 982-0090 (telephone)
(312) 429-0644 (facsimile)

*Attorneys for Defendant City of Chicago*

## CERTIFICATE OF SERVICE

I hereby certify that on **October 27, 2021**, I electronically filed the foregoing **Defendant City of Chicago's Answer to Plaintiff's Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record via the Court's CM/ECF system.

*/s/ Paul A. Michalik*